# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-444-JMG |
| MATTHEW JAMES ADDY | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Matthew James Addy, a convicted securities scammer, committed fraud against two individual victims, identified in the indictment as Victim 1 and Victim 2. Holding himself out as a wealthy investor and consultant, Addy persuaded the victims to make investments with and loans to him, the proceeds of which Addy pocketed. Addy also stole Victim 1's identity in connection with obtaining two loans in the name of Victim 1's oral surgery practice, without Victim 1's knowledge, the proceeds of which loans Addy diverted to his own use. In addition, in mid-2021, Addy committed bank fraud against the credit union where he held an account. His crimes caused a loss totaling approximately $755,995 ($722,495 to Victim 1, $25,000 to Victim 2, and $8,500 to Addy's credit union). Addy poses a financial danger to those who come in contact with him. For these reasons, as well as for the reasons provided below, the government asks the Court to accept the plea agreement and impose the agreed-upon sentence: 51 months imprisonment on Counts 1 through 13 and 16, to run consecutive to concurrent 24-month terms of imprisonment on Counts 14 and 15, for a total term of imprisonment of 75 months; three years of supervised release; restitution of $755,995; special assessments of $1,600; and a fine, if any; and forfeiture as determined by the Court.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1] In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 516 F.3d 205, 214-18 (3d Cir. 2008).

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted); *see also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

The government explains below its view of the proper consideration in this case of the advisory guideline range, the Section 3553(a) factors and the appropriateness of the agreed sentence.

## I.  BACKGROUND

On April 9, 2026, defendant Addy pleaded guilty to thirteen counts of wire fraud, two counts of aggravated identity theft, and one count of bank fraud, in violation of 18 U.S.C. §§ 1343, 1028A, and 1344, in connection with investment fraud and bank fraud schemes. During his plea colloquy, Addy admitted that during the indictment period, that is, January 2020 until June 2023, in Lancaster County, he schemed to defraud Victim 1 and Victim 2, by persuading each victim to make "investments" with and "loans" to him and/or his purported business, the "Yarah Group." But there were no actual investments; Addy took the funds to be invested with and loaned to him, and used them for his own purposes. Addy further admitted that while obtaining two loans in the name of Victim 1's oral surgery practice, without Victim 1's knowledge, he stole Victim 1's identity and pocketed the loan proceeds. Finally, Addy admitted that in mid-2021, he committed bank fraud against the credit union where he held an account.

## II.  SENTENCING CALCULATION

### A.  Statutory Maximum Sentence

The total statutory maximum sentence is a term of imprisonment of 294 years, including a mandatory consecutive sentence of two years; a $4,750,000 fine, $1,600 in special assessments, and a term of supervised release of five years. Full restitution shall also be ordered, in an approximate amount of $755,995 ($722,495 on Counts 1 – 11, the wire fraud counts concerning Victim 1; $25,000 on Counts 12 and 13, the wire fraud counts concerning Victim 2; and $8,500 on Count 16, the financial institution fraud count concerning the credit

union). Forfeiture of all proceeds from the offenses also may be ordered. There is a mandatory minimum term of imprisonment of two years on Counts 14 and 15, the aggravated identity theft charges, one of which terms must be served consecutive to all other sentences imposed.

B.      **Sentencing Guidelines Calculation**

The Probation Office correctly calculated the defendant's advisory guideline range as follows: the base offense level is 7 pursuant to USSG § 2B1.1(a)(1) (PSR ¶ 59); the offense level is increased by 14 levels, pursuant to USSG § 2B1.1(b)(1)(H), because the loss exceeded $550,000 but was $1,500,000 or less, for an intermediate guideline range of 21 (PSR ¶60); and three offense levels are subtracted for acceptance of responsibility per USSG § 3E1.1(a) and (b), for a total offense level of 18 (PSR ¶¶ 66, 67, 69).

The defendant has a prior federal felony conviction in 2013 for securities fraud in Criminal No. 1:13CR00057-01, filed in the Eastern District of Virginia ("EDVA") (PSR ¶ 73). In the EDVA case, for two years, the defendant operated a Ponzi scheme against 41 individual victims, causing a total actual loss of $2,744,321, for which he was sentenced to 51 months in prison (PSR ¶¶ 73-76).[2] Addy's prior conviction yields three Criminal History points (PSR ¶ 73). The defendant has a 2005 conviction for disorderly conduct in the State of New York, which is too old to count, as well as a more recent criminal conviction, in 2024, in the Court of Common

---

[2]      According to the EDVA securities fraud indictment, to which Addy pleaded guilty, from 2010 to 2012, Addy ran a Ponzi scheme that involved the supposed purchase and resale of jewelry and loose precious stones. He was sentenced to 51 months in prison and three years' supervised release, and ordered to pay $2,741,321 in restitution to his victims. As outlined in the PSR, in total, Addy paid only $12,943.30 of the restitution (PSR ¶ 78), and failed to make consistent monthly payments toward restitution after July 2018, making only five payments between July 2018 and the end of his supervised release on March 30, 2020, even though the Court had reduced the monthly installments from $250 to $100 at Addy's request (PSR ¶ 79).

Pleas of Lancaster County, for driving under the influence. In that 2024 DUI case, the defendant was sentenced to six months of probation, yielding an additional Criminal History point (PSR ¶¶ 80-81). In addition, the defendant committed part of the instant offense while under federal supervised release for the securities fraud case. (Supervised release ended March 30, 2020, but Addy had begun the investment fraud scheme against Victim 1 in January 2020.) However, no criminal history points accrue because the defendant has fewer than seven Criminal History points. USSG § 4A1.1(e) (PSR ¶ 83).

A criminal history score of four establishes a Criminal History Category of III. A person with an offense level of 18 and a Criminal History Category of III faces an advisory Sentencing Guideline range of 33 to 41 months. Defendant Addy also faces a 24-month mandatory consecutive sentence on one of Counts 14 and 15. Therefore, defendant Addy's total recommended guideline range is **57 to 89 months in prison**.

## III.    ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). [3]

### A.      Consideration of the 3553(a) Factors Regarding Imprisonment

The defendant engaged in a serious offense. Having previously defrauded 41 individuals out of more than $2 million in his 2013 securities fraud case, here Addy took advantage of two more innocent people and a small credit union, causing significant loss, especially to Victim 1, who suffered the bulk of the loss, approximately $722,495. As both victims recounted in their victim statements, PSR ¶ 53, they did not just lose money to the defendant. Due to Addy's

---

[3] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (*quoting United States v. Navedo Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

deception, both lost trust in other people, and in their own judgment. Addy's crime falls squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of the agreed-upon sentence, which falls within the guideline range.

Further, the defendant's history supports the need for significant incarceration. When communicating with the Probation Department in the EDVA case, Addy claimed to have accepted responsibility for his crime, and said he would never again find himself in trouble with the criminal justice system (PSR ¶ 76). However, Addy then began defrauding Victim 1 – the victim from whom Addy stole the most through his lies – even before he had finished his term of supervised release in the EDVA case. And, as pointed out in the PSR, Addy failed to pay nearly all of the restitution in the EDVA case. These actions show a serious lack of remorse, as well as a danger of recidivism. It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). Furthermore, the agreed-upon sentence of 75 months in prison, which falls within the range of 57 to 89 months recommended by the guidelines, affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. *Id.*

In addition, because it is within the recommended guideline range, imposition of the agreed-upon sentence assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in

the most effective manner." § 3553(a)(2)(D). And while restitution is an issue in this case, the

defendant still owes $2,693,425.51 in restitution on the 2013 EDVA case (PSR ¶ 79), so it would

not assist the victims in this case[4] to impose a sentence shorter than the agreed sentence, as the

victims in this case stand far back in the line of victims to receive restitution. § 3553(a)(7).

In this case, the defendant has not set forth any argument for leniency. This makes

sense, as the parties' plea agreement stipulated that a sentence of 75 months in prison; three

years of supervised release; restitution of $755,995; assessments of $1,600; a fine, if any; and

forfeiture as determined by the Court was an appropriate resolution of this case. The proposed

sentence is quite fair to the defendant, in the circumstances, given the egregious

conduct repeated over time, the defendant's status as a repeat offender, and the large loss.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition

in this case of the agreed-upon sentence, which falls within the recommended guideline range.

---

[4]    Further investigation by the FBI, conducted months after the indictment, led to the discovery of Victim 3. The government disclosed the information it had discovered about Victim 3 to the defense and the Probation Office. The PSR details the fraud against Victim 3, and that Victim 3 lost approximately $96,771.99 ($136,844.63 Canadian) due to Addy's misrepresentations. PSR ¶ 49 & n.4.

The government agrees with the PSR that Victim 3 is a victim of Addy's fraud for guideline purposes, not least because the Court has broad authority to consider all information about the defendant under 18 U.S.C. §§ 3661 and 3553(a). However, in light of two factors (1) the venue issues presented by the fraudulent conduct having taken place, mostly if not entirely, in Canada, and (2) the plea agreement stipulation to loss in the total amount of $755,995, the government takes no position on whether Addy's fraud against Victim 3 constitutes relevant conduct within the meaning of USSG § 1B1.3(a)(2), as part of the same course of conduct as the crimes charged in the indictment. We note that there is an approximate one-year gap in time between the end of the fraud against Victim 2 and the start of the fraud against Victim 3. In addition, if the Court considers Addy's fraud against Victim 3 to be relevant conduct, this does not change the guideline calculations, either under the present guidelines or the guidelines scheduled to go into effect November 1, 2026. Finally, we note that the Court cannot order restitution to Victim 3, as the fraud against Victim 3 was not included in the plea agreement as a stipulated additional offense, due to the time of its discovery.

As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

### B.    Supervised Release

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of three years, as agreed by the parties, is warranted. As explained above, the defendant presents a significant record of criminal conduct, usually involving fraud against individual victims. Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public from financial harm. A term of supervised release in this case advances the goals of sentencing to deter criminal

conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. n.2.

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3, as well as these additional conditions, as set forth in the Addendum to the PSR: mental health testing and treatment; refrain from use of alcohol; submit to alcohol testing; participation in alcohol treatment; full financial disclosure including yearly income tax returns on the request of the United States Probation Office; and no new credit charges or new lines of credit without the approval of the Probation Officer.

## IV.   CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that the agreed-upon sentence of a total term of imprisonment of 75 months; three years of supervised release; restitution of $755,995; special assessments $1,600; a fine, if any; and forfeiture as determined by the Court, should be imposed. Government counsel submits that this represents a significant

sentence that fully accounts for the scope and severity of the defendant's criminal conduct and is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Mary E. Crawley*
MARY E. CRAWLEY
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:


Nancy MacEoin, Esq.
Federal Defender
Nancy_Maceoin@fd.org


/s Mary E. Crawley
MARY E. CRAWLEY
Assistant United States Attorney


DATED:  <u>July 21, 2026</u>